UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO:

OLGA LOPEZ,

   Plaintiff,

v.

HALLANDALE OUTPATIENT
SURGICAL CENTER, LTD.,
LANCE LEHMANN, individually, and
LILIANA LEHMANN, individually,

   Defendants.

_____/

## COMPLAINT

Plaintiff, OLGA LOPEZ ("Plaintiff"), pursuant to *29 U.S.C. § 216(b)*, files the following Complaint against Defendants, HALLANDALE OUTPATIENT SURGICAL CENTER, LTD., LILIANA LEHMANN, individually, and LANCE LEHMANN, individually (collectively referred to hereinafter as "Defendants"), and alleges:

### INTRODUCTION

1. This is an action arising under the Fair Labor Standards Act ("FLSA") pursuant to *29 U.S.C. §§ 201-216*, and the Florida Whistle-Blower Statute pursuant to *Fla. Stat. § 448.102*.

### PARTIES

2. During all times material hereto, Plaintiff resided in Miami-Dade County, Florida, and Broward County, Florida, is over the age of 18 years, and otherwise *sui juris*.

3. At all times material hereto, Defendant, HALLANDALE OUTPATIENT SURGICAL CENTER, LTD. ("HOSC"), was and is a Florida corporation located and transacting business within Broward County, Florida, within the jurisdiction of this Court. HOSC operates its principal location at 306 East Hallandale Beach Boulevard, Hallandale Beach, Florida 33009.

4. At all times material hereto, Defendant, LANCE LEHMANN ("Dr. Lehmann"), was and is a resident of the Southern District of Florida, operator of the Defendant company within Broward County, Florida, over the age of 18 years, and is the corporate officer and/or owner and/or managing member of the Defendant company and runs and has ultimate control and decision making authority over HOSC for the relevant time period, and was therefore Plaintiff's employer defined by *29 U.S.C. 203(d)* during the relevant employment period.

5. At all times material hereto, Defendant, LILIANA LEHMANN ("Mrs. Lehmann"), was and is a resident of the Southern District of Florida, and acted as administrative manager of the Defendant company and runs and has control and decision making authority over HOSC and Plaintiff, and was responsible for setting and paying Plaintiff's wages for the relevant time period, and had ultimate control and authority over Plaintiff's work and work schedule, including, but not limited to hiring and firing authority, and was therefore Plaintiff's employer defined by *29 U.S.C. 203(d)* during the relevant employment period.

6. At all times material hereto, upon information and belief, HOSC, Dr. Lehmann, and Mrs. Lehmann were the FLSA employers during Plaintiff's relevant period of employment.

## JURISDICTION AND VENUE

7. All acts and omissions giving rise to this dispute took place within Broward County, Florida, and HOSC is headquartered and regularly transacts business in Broward County, Florida.

8. Jurisdiction is proper within the Southern District of Florida pursuant to *29 U.S.C. § 216(b)* and *28 U.S.C. §§ 1331* and *1337*.

9. Supplemental jurisdiction over state claims arising under the Florida Whistleblower Statute are also properly before this Court pursuant to *28 U.S.C. § 1367*.

10. Venue is proper within the Southern District of Florida pursuant to *29 U.S.C. § 216(b)* and *28 U.S.C. § 1391(b)*.

## GENERAL ALLEGATIONS

11. HOSC is a multispecialty ambulatory medical facility in Broward County, Florida, that offers surgical procedures in an outpatient setting.

12. Plaintiff began working as an employee for HOSC on March 1, 2015, and was offered a salary of $85,000.00 per year.

13. Notwithstanding HOSC's multiple promises to provide Plaintiff a written employment agreement, no such written agreement was ever produced by HOSC.

14. During all times pertinent to her employment, Plaintiff was a non-exempt employee under the FLSA.

15. Defendant, HOSC required Plaintiff to clock in and out of work during the weekday, which demonstrates that HOSC treated Plaintiff as a non-exempt, hourly employee, and further

demonstrates that HOSC was on notice of the hours worked by Plaintiff during all times material to her employment.

16. During her employment, Plaintiff was **_never_** vested with any authority to make independent day-to-day judgment decisions of significance on behalf of HOSC, and was not involved in establishing or determining any of HOSC's overall policies.

17. Furthermore, Plaintiff's primary duties at HOSC did not permit her any authority or power to make independent choices, free from immediate direction or supervision on matters of significance.

18. During Plaintiff's employment, her work consisted of non-exempt work under the FLSA, including routine mental, manual, and physical work, greeting patients, transcribing physician orders, lifting clients and/or equipment, reviewing budgets, reviewing verification of employee time cards, assisting in the orientation and training of new employees, submitting audits to be reviewed by Mrs. Lehmann, and cross-training in other center areas to serve as a staff member where applicable.

19. Plaintiff developed the ability to perform these tasks from skills acquired from her prior experience in this field.

20. Plaintiff was required to report directly to Defendant, LILIANA LEHMANN (HOSC Administrator), who ran the day-to-day operations of the center and made the day-to-day judgment decisions for HOSC, including hiring and firing decisions and payroll decisions.

21. Defendant, LILIANA LEHMANN, was therefore Plaintiff's FLSA employer during all times pertinent to Plaintiff's employment with HOSC, and is individually liable under the FLSA.

22. Plaintiff was employed by HOSC from March 1, 2015, through May 12, 2017.

23. During the 115 weeks of her employment, Plaintiff worked an average of 60 hours per week and 11 hours per weekend, for a grand total of 71 hours per week.

24. Plaintiff was regularly assigned tasks by Defendant, LILIANA LEHMANN, which required Plaintiff to work from home on the weekends.

25. Plaintiff advised Defendant, LILIANA LEHMANN, and HOSC of the number of hours she was working on the weekends on multiple occasions.

26. During the 115 weeks of her employment with HOSC, Plaintiff was ***never*** compensated for any hours she worked in excess of 40 per week.

27. On May 9, 2017, Plaintiff was assisting Defendant, LILIANA LEHMANN, with an internal audit for state regulatory compliance, and Plaintiff flagged what she believed to be multiple violations of state regulations.

28. That very same day, an HOSC employee approached Plaintiff with a report that she had been criminally assaulted by a fellow employee.

29. Plaintiff immediately brought the state regulatory violations and reports of criminal conduct to Defendant, LILIANA LEHMANN'S attention.

30. Three days later, on May 12, 2017, Plaintiff was called into an office with Defendant, LILIANA LEHMANN, and Mike Fernandez ("Mr. Fernandez"), the Chief Operating Officer of HOSC.

31. During this meeting, Mr. Fernandez and Defendant, LILIANA LEHMANN, advised Plaintiff that she was terminated.

32. Mr. Fernandez and Defendant, LILIANA LEHMANN refused to provide Plaintiff with any explanation for her termination, and told Plaintiff that they would be advising other

employees that she had "voluntarily resigned," and told Plaintiff that they expected her to do the same.

33. Defendant, LANCE LEHMANN, was the managing member of HOSC during all times pertinent to this lawsuit, and had final decision-making authority for HOSC on issues of employment and termination.

34. Defendant, LANCE LEHMANN, knew that Plaintiff was working in excess of forty hours per week, and approved the unlawful treatment of Plaintiff during all material times of her employment.

35. Defendant, LANCE LEHMANN, is therefore individually liable under the FLSA for any decisions made by HOSC.

## COUNT I – FEDERAL OVERTIME WAGE LAW VIOLATIONS
(against All Defendants)

36. Plaintiff re-avers Paragraphs 12 through 35 above, as though fully set forth herein.

37. *29 U.S.C. 207(a)* states, *inter alia*, that "if an employer employs an employee for more than 40 hours in any work week, the employer must compensate the employee for hours in excess of 40 at the rate of at least one and one half times the employee's regular rate…"

38. Plaintiff in this case worked as a non-exempt employee for Defendants from March 1, 2015, through and including May 12, 2017.

39. Defendants are covered under the FLSA through enterprise coverage.

40. More specifically, Defendants' business activities involved those to which the FLSA applies. Defendants' business and Plaintiffs' work for the Defendants affected interstate commerce because the materials and goods used on a constant and/or continuous basis moved through interstate commerce prior to or subsequent to Plaintiff's use of the same. Defendants also offered services to individuals residing outside the State of Florida, and

Plaintiff's work for the Defendants was actually in and/or so closely related to interstate commerce while she worked for Defendants in this case.

41. Defendants also regularly employed two or more employees for the regular time period who handled goods or materials similar to those handled by Plaintiff, or used the instrumentalities of interstate commerce or the mails, thus making Defendants' business an enterprise covered by the FLSA. One example of Plaintiff's use of interstate instrumentalities is her regular business phone calls to recipients and out-of-state vendors outside the state of Florida, and further use of interstate mailings and e-mails during performance of her regular business activities.

42. Upon information and belief, the Defendants' corporation grossed or did business in excess of $500,000.00 annually during the years of 2015 and 2016, and is expected to gross amounts in excess of $500,000.00 for 2017.

43. Plaintiff's use of interstate instrumentalities (including, but not limited to, regular business phone calls made to out of state recipients) also establishes individual coverage under the FLSA in this case.

44. Between March 1, 2015, and May 12, 2017, Plaintiff was compensated at a rate of $85,000.00 per year, or $40.86 per hour.[1] Defendants never informed Plaintiff that the $85,000.00 would cover overtime, and never provided Plaintiff any written employment agreement to such effect. Plaintiff therefore reasonably believed she would be compensated for any hours worked in excess of forty hours per week, including any hours spent working for HOSC on the weekend. On information and belief, from March 1, 2015,

---

[1] This regular hourly rate is determined by dividing Plaintiff's annual salary by 52 weeks. The $1,634.61 weekly salary is then divided by the 40-hour work week which Plaintiff reasonably believed would be covered by the salary, and results in a regular hourly rate of $40.86.

7

through May 12, 2017, Plaintiff worked an average of 71 hours per week, and was only compensated for the first forty (40) hours, leaving 3,565 overtime hours for which she was never compensated.

45. Plaintiff is entitled to an overtime hourly premium of one and one half times her regular hourly rate in the amount of $61.29.

46. Based on the 3,565 overtime hours worked from March 1, 2015, through May 12, 2017, Plaintiff is entitled to $218,498.85 in unliquidated damages.

47. The amount set forth above is to Plaintiff's best current information, knowledge and belief, and constitutes an estimate of amounts owed based upon documentation in Plaintiff's possession and her own personal recollection.

48. As set forth more fully below, Defendants' failure, through today's date, to pay amounts owed pursuant to the Fair Labor Standards Act, is willful and intentional. Defendants knew of the overtime requirements of the Act and either intentionally avoided or recklessly failed to investigate proper payroll practices as they relate to the law.

49. Accordingly, Plaintiff is entitled, and specifically requests, liquidated damages in an amount equal to double the unpaid time and a half that is due and owing, in an amount equaling $436,997.70.

50. Plaintiff is further entitled to all reasonable attorney's fees and litigation costs from the Defendants, jointly and severally, pursuant to the FLSA as cited above, with all amounts set forth hereinabove to be proven at trial, in a trial by jury, and for entry of judgment for such other amounts as this Court deems just and equitable under the circumstances.

WHEREFORE, Plaintiff, OLGA LOPEZ, respectfully requests double unpaid overtime wages as provided by the Fair Labor Standards Act, as well as all reasonable attorney's fees and

litigation costs from the Defendants, HALLANDALE OUTPATIENT SURGICAL CENTER, LTD., LILIANA LEHMANN, and LANCE LEHMANN, jointly and severally, pursuant to the Fair Labor Standards Act, and judgment for all such other amounts as this Court may deem just and equitable under the circumstances.

## COUNT II – VIOLATION OF FLORIDA'S PRIVATE SECTOR RETALIATORY DISCHARGE STATUTE, *FLA. STAT. § 448.102(2)* (against Defendant, HOSC)

51. Plaintiff re-avers and re-alleges Paragraphs 12 through 35 above, as though fully set forth herein.

52. HOSC is a private corporation that employs ten or more people.

53. Plaintiff engaged in statutorily protected activity.

54. Plaintiff reported HOSC's violation and noncompliance with state regulations to HOSC administration, including Defendant, LILIANA LEHMANN on May 9, 2017.

55. On that very same day, Plaintiff received reports of employees engaged in criminal conduct and immediately reported this information to Defendant, LILIANA LEHMANN, on May 9, 2017.

56. Plaintiff further advised Defendants of her intent to contact law enforcement to report this unlawful conduct.

57. Three days later, on May 12, 2017, HOSC knowingly and willfully, committed a retaliatory personnel action against Plaintiff because of, in retaliation for, and as a direct result of the conduct described herein, including but not limited to terminating her employment in retaliation for her participation in internal investigations into violations and non-compliance of Florida law.

58. More specifically, on May 12, 2017, Plaintiff was called into a meeting with Defendant, LILIANA LEHMANN, and HOSC Chief Operating Officer, Mike Fernandez and was immediately terminated without any explanation whatsoever.

59. Defendant, LILIANA LEHMANN, and Mr. Fernandez had authority to direct and control the work performance of Plaintiff and both had managerial authority to take corrective action regarding the violations of law, rule, or regulation of which Plaintiff complained.

60. During this May 12, 2017, meeting, Defendant, LILIANA LEHMANN and Mr. Fernandez terminated Plaintiff and refused to provide Plaintiff with any explanation for her termination.

61. Notwithstanding that Plaintiff was expressly and unequivocally terminated by HOSC, Mr. Fernandez and Defendant, LILIANA LEHMANN further advised Plaintiff that they would be informing all staff that Plaintiff had "voluntarily resigned" and that she was expected to do so as well, in order to further cover HOSC's unlawful conduct.

62. HOSC's retaliatory conduct in discharging Plaintiff caused her to suffer significant economic and emotional damages in an amount to be proven at trial.

WHEREFORE, Plaintiff, OLGA LOPEZ, demands judgment be entered in her favor against Defendant, HALLANDALE OUTPATIENT SURGICAL CENTER, LTD., for violation of Florida's Private Sector Whistle-Blower's Act (Fla. Stat. 448.102(2)) and that she be provided with the relief available under Fla. Stat. 448.103(2), as follows:

(a) Reinstatement of Plaintiff's position with HOSC to that held before the retaliatory personnel action, or an equivalent position;

(b) Reinstatement of full fringe benefits and seniority rights;

(c) Compensation for lost wages, benefits, and other remuneration;

(d) Any other compensatory damages allowable at law;

(e) Economic and non-economic damages, including but not limited to damages for emotional distress;

(f) Pre- and post-judgment interest;

(g) Attorneys' fees and expenses, court costs; and

(h) Such further relief as this court deems just and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, OLGA LOPEZ, hereby requests and demands a trial by jury on all appropriate claims.

**Dated this 7th day of June, 2017.**

> Respectfully Submitted,
>
> **Jordan Richards, PLLC**
> 401 East Las Olas Blvd. Suite 1400
> Fort Lauderdale, Florida 33301
> (954) 871-0050
>
> By: */s/ Jordan Richards*
> JORDAN RICHARDS, ESQUIRE
> Florida Bar No. 108372
> Jordan@jordanrichardslaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document was filed via CM/ECF on this 7th of June, 2017.

> By: */s/ Jordan Richards, Esquire*
> JORDAN RICHARDS, ESQ.
> Florida Bar No. 108372